**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JONI MAGEE, M.D.** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **LOCAL 2187, AMERICAN FEDERATION** | : | |
| **OF STATE, COUNTY AND MUNICIPAL** | : | |
| **EMPLOYEES and ADMINISTRATIVE,** | : | |
| **PROFESSIONAL AND TECHNICAL** | : | |
| **ASSOCIATION, CITY OF** | : | |
| **PHILADELPHIA, DISTRICT COUNCIL 47** | : | |
| **OF THE AMERICAN FEDERATION OF** | : | |
| **STATE, COUNTY AND MUNICIPAL** | : | |
| **EMPLOYEES, AFL-CIO** | : | **NO.  05-1669** |

**MEMORANDUM AND ORDER**

**NORMA L. SHAPIRO, S.J.**                                          **JULY 21, 2008**

*Pro se* plaintiff, Dr. Joni Magee ("Dr. Magee"), alleges defendants American Federation

of State, County and Municipal Employees, District Council 47, Local 2187 ("Local 2187") and

American Federation of State, County and Municipal Employees, District Council 47 ("District

Council 47") discriminated and retaliated against her in violation of the Age Discrimination in

Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq*., and the Pennsylvania Human Relations

Act ("PHRA"), 43 Pa. C.S.A. § 955, *et seq*..  Defendants filed a motion for summary judgment

and supplemental motion for summary judgment on both claims.  Dr. Magee filed a motion to

proceed directly to argument and open discovery.  This court has federal question jurisdiction

under 28 U.S.C. § 1331.

**I.      PROCEDURAL HISTORY**

Dr. Magee filed a *pro se* action alleging discrimination and retaliation in violation of the

ADEA and PHRA against Local 2187 and District Council 47.  The action was initially assigned

to the Honorable Lawrence F. Stengel, United States District Judge.  The court entered a default in favor of Dr. Magee.  Defendants moved to set aside the entry of default and the court granted the motion.  After a conference with the parties, the court filed a scheduling order allowing approximately three months for discovery.  Upon Dr. Magee's request, the court granted an extension of another six weeks for discovery.  During this time period, Dr. Magee took the depositions of Catherine G. Scott ("Scott"), President of Local 2187, and Thomas P. Cronin ("Cronin"), President of District Council 47.  After discovery, Local 2187 and District Council 47 filed a motion for summary judgment.  The parties stipulated that Dr. Magee could respond to defendants' motion for summary judgment by March 20, 2006.  Dr. Magee requested an extension of time, and the court granted her until April 25, 2006, to respond to defendants' motion.  Dr. Magee filed a second amended complaint, but the court ordered it stricken for failure to comply with Rule 15 of the Federal Rules of Civil Procedure.  Dr. Magee also filed a response to defendants' motion for summary judgment.  The action was re-assigned to this judge.

The court held a status conference and issued another scheduling order opening discovery for more than three additional months to allow Dr. Magee to conduct depositions.  Defendants' motion for summary judgment was denied without prejudice to renew at the close of discovery.  After the close of discovery, defendants filed a motion for reconsideration of their motion for summary judgment, and a renewed motion for summary judgment.  After a hearing, the court denied the motion for reconsideration of the motion for summary judgment as moot, because defendants had already filed a renewed motion for summary judgment.  Defendants also filed a motion *in limine* to preclude Dr. Magee from calling defense counsel, Linda M. Martin, Esq., and Ralph J. Teti, Esq., as witnesses at trial.  The court granted the motion *in limine* in part as to

Linda M. Martin, Esq., and denied it in part as to Ralph J. Teti, Esq., without prejudice to renew at trial.  Because Dr. Magee's arbitration proceeding against the City had not yet concluded, the court placed this action in administrative suspense pending the outcome of the arbitration.  Counsel entered an appearance on behalf of Dr. Magee but withdrew with leave of court while this action was in suspense.

Upon receiving the arbitrator's decision regarding Dr. Magee's claims against the City, the court removed this action from administrative suspense and held a status hearing.  Because the action had been in administrative suspense for some time, the court allowed defendants to supplement their renewed motion for summary judgment and allowed Dr. Magee one month to respond.  Defendants filed a supplement to their renewed motion for summary judgment; Dr. Magee did not file a response.

Dr. Magee filed a motion to join as defendants the American Federation of State, County, and Municipal Workers, and the City of Philadelphia.  Dr. Magee argued: she was a "class of one" under Rule 23 of the Federal Rules of Civil Procedure; she was beset by malpractice attorneys; and she was a "dyed in the wool heterosexual."  Defendants responded in opposition. The court denied the motion because Dr. Magee did not raise valid arguments in support of joinder under Rule 20 of the Federal Rules of Civil Procedure.

The court scheduled oral argument on the other outstanding motions for June 12, 2008. Dr. Magee failed to appear.  The court stated it would decide the motions on the papers without hearing oral argument.

Dr. Magee faxed a letter to the court on June 17, 2008.  She stated she lost her appointment book and Internet connection, she had a stroke and underwent carotid

endarterectormy in early June 2007, she was frivolously charged with attempted theft of credit

card by her husband in 2005 and was represented by a mentally ill attorney, and she was busy

with medical visits, five court actions, and legal research for each action.  She requested that this

action be suspended until after September 30, 2008.  In a letter dated June 17, 2008, defendants

opposed the suspension because numerous extensions of discovery and opportunities to present

her case were granted to Dr. Magee.

On July 16, 2008, Dr. Magee sent an e-mail to the court.  She stated her health interfered

with her ability to receive e-mail and print her calendars.  She averred she had a left carotid

endarterectomy in early June 2007, and she had a disability in her right arm and hand.  She stated

full recovery of her brain function would range from twelve to eighteen months from June 2008.

Dr. Magee reiterated her request for a continuance until after September 30, 2008.  Defendants

opposed the request for a continuance.  While the court is sympathetic to Dr. Magee's health

problems, she must be able to prosecute this action without undue delay.  The court denies Dr.

Magee's request to place this action in suspense until after September 30, 2008.

Before the court are Dr. Magee's motion to open discovery and proceed directly to oral

argument and defendants' motions for summary judgment.

## II.    MOTION TO PROCEED DIRECTLY TO ARGUMENT AND OPEN DISCOVERY

Dr. Magee moves to open discovery to depose David Mora ("Mora"), Vice President of

Local 2187, as an expert witness on damages due Dr. Magee under her city employment contract.

Dr. Magee has not explained why it is necessary for Mora to calculate the amounts she alleges

are due under her employment contract.  She has not explained what knowledge Mora, a Local

2187 official, may possess about damages under her individual employment contract.  Any

information regarding Dr. Magee's wages and benefits from the City Health Department is

accessible to Dr. Magee without testimony from Mora.  Dr. Magee has been granted more than

seven and a half months for discovery and two extensions of time to complete discovery and

conduct depositions.  Dr. Magee will not be granted a further extension of time to obtain the

testimony of Mora.

With respect to Dr. Magee's request to proceed directly to argument, Dr. Magee was

provided the opportunity for oral argument on the outstanding motions, but failed to appear, so

the court stated it would decide the outstanding motions on the papers.

Defendants' renewed motion for summary judgment and supplemental motion for

summary judgment are ripe for review and oral argument will not be necessary or beneficial.  Dr.

Magee's motion to proceed directly to argument and open discovery will be denied.

## III.    MOTIONS FOR SUMMARY JUDGMENT

District Council 47 and Local 2187 filed a renewed motion for summary judgment and

supplemental motion for summary judgment on Dr. Magee's ADEA and PHRA claims; they

argue: (1) Dr. Magee failed to exhaust administrative remedies against Local 2187; and (2) Dr.

Magee has not produced evidence to support a *prima facie* case of age discrimination or

retaliation.

A motion for summary judgment is granted if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to judgment as a matter

of law."  Fed. R. Civ. P. 56(c).  The moving party bears the burden of proving no genuine issue

of material fact exists. <u>ABB Automation Inc. v. Schlumberger Resource Management Serv., Inc.</u>, 254 F.Supp. 2d. 479, 481 (3d Cir. 2002). The court views the underlying facts and all reasonable inferences in the light most favorable to the nonmoving party. <u>Id</u>. But for a nonmoving party to survive a motion for summary judgment, there must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986). If the nonmoving party fails to make a sufficient showing on an essential element of that party's case with respect to which it bears the burden of proof, summary judgment should be granted. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

### A.    Facts

Dr. Magee, a board certified obstetrician/gynecologist, was born on April 14, 1941. On October 9, 2002, the City of Philadelphia Health Department ("City") hired Dr. Magee by telephone to work as a clinician on an hourly basis.

District Council 47 is the certified bargaining unit for nine local unions including Local 2187; it consists of officers and two representatives from each local union. (Cronin Dep. 25:22-26:3, Jan. 6, 2006.) District Council 47 negotiates the collective bargaining agreements between Local 2187 and the City of Philadelphia. (Cronin Dep. 52:9-23.) The offices of District Council 47 and the local unions it represents are located at 1606 Walnut Street in Philadelphia. According to Scott, President of Local 2187, Local 2187 is distinct from District Council 47; it has its own elected officers and executive board, and independently enforces its collective bargaining agreement with the City of Philadelphia. (Scott Aff. ¶ 3.) Local 2187 files grievances and pursues them through a grievance process; when it decides arbitration of a grievance is appropriate, it submits the grievance to District Council 47 for approval to arbitrate. District

Council 47 is responsible for some costs of arbitration.  Dr. Magee's clinician position was a job classification with Local 2187's bargaining unit.

### 1.      Change in pension plan

Before Dr. Magee's hire, the City and Local 2187 negotiated an amendment to the City's pension ordinance to create Pension Plan Y.  Under the amendment, Pension Plan Y applied to any employee hired after October 1, 1992.  Dr. Magee testified her appointment papers from October, 1992, stated she was enrolled in Pension Plan J.  When Dr. Magee applied to the City's Deferred Retirement Option Plan ("DROP") in 2002, she learned that she had been transferred from Pension Plan J to Pension Plan Y.  Dr. Magee, asserting she had been hired under Pension Plan J and was unlawfully transferred to Pension Plan Y, filed an appeal with the Pension Board. Dr. Magee testified she did not ask Local 2187 to represent her at the proceedings before the Philadelphia Pension Board, but she notified Mora, Vice President of Local 2187, of the proceedings prior to her first hearing before the Pension Board.

Dr. Magee asked Mora to provide her an attorney to help her with a procedural issue regarding her appeal to the Pension Board.  Mora provided Dr. Magee the telephone number for Local 2187's legal services fund attorneys.  The attorneys told Dr. Magee they could not assist her because of a conflict of interest.  The City provides Local 2187 its legal services plan, which does not permit City employees to take actions or obtain advice against the City.  Dr. Magee testified that she informed Mora of the attorneys' response, but did not pursue the matter further.

### 2.      Reduction in work hours

In the fall of 2001, the City reduced Dr. Magee's work hours by twelve hours a week; this resulted in a reduction of Dr. Magee's wages and pension contributions.  At the same time, the

City increased the work hours of Dr. Wanita Burton, who is six years younger than Dr. Magee, by twelve hours a week.  In January 2002, Dr. Magee asked Local 2187 to file a grievance on her behalf to challenge the City's decision to reduce her work hours.  Jeffrey Weeden ("Weeden"), a member of the Local 2187 Executive Board, wrote Dr. Magee a letter stating he believed her grievance lacked merit because she rejected the City's offer of full-time employment with benefits.  Dr. Magee asked Scott, President of Local 2187, to pursue her grievance and requested a meeting.

Scott met with Weeden to discuss Dr. Magee's situation, and directed him to draft a grievance for Dr. Magee's review.  Weeden faxed Dr. Magee a draft grievance, which Dr. Magee amended and signed.  Weeden sent the amended grievance to the City Health Department's acting commissioner and requested the Health Department to hold the grievance in abeyance until Local 2187 could complete its investigation and make a decision on the merits.

On February 22, 2002, and March 1, 2002, Scott and Cronin, President of District Council 47, met with Dr. Magee to address her work schedule grievance.  At the meetings, Dr. Magee discussed her concern that Barbara Capezio ("Capezio"), Chief Steward for Local 2187 and a City nurse practitioner, was not providing her with representation.  At the meeting on February 22, Scott gave Dr. Magee a copy of the Local 2187 Master Agreement, the Local 2187 Constitution, and two "Memorandums of Understanding."  Scott later forwarded Dr. Magee a copy of the Philadelphia Civil Service Regulations, and requested additional information from Dr. Magee.

In November 2002, Dr. Magee filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") against the City and Pension Board for

8

reducing her hours.

Scott contacted the City Health Department at least four times to obtain information related to Dr. Magee's grievance.  The City Health Department failed to respond to these requests, so Local 2187's attorney wrote a letter demanding the information.  On December 18, 2002, Local 2187 moved Dr. Magee's grievance to the next step in the Collective Bargaining Agreement's grievance process.  On February 11, 2003, after the City failed to respond to information requests, Local 2187 filed an unfair labor practice charge against the City Health Department.  Local 2187 amended Dr. Magee's grievance to allege punitive conduct, and sent it to District Council 47 for referral to arbitration.  On March 31, 2003, District Council 47 submitted an arbitration demand to the American Arbitration Association ("AAA").  An arbitrator was selected and a hearing scheduled for November 1, 2004.

### 3.      Termination of employment and arbitration against the City

On January 7, 2004, City Health Department administrators recommended Dr. Magee be subject to a series of suspensions without pay, for one, ten, twenty, and thirty days, with intent to terminate her employment.  On January 23, 2004, Mora administratively appealed the City Health Department's discipline decision.  The City Health Department's disciplinary panel heard the appeal and approved the one day suspension, reduced the ten day suspension to five days, reduced the twenty day suspension to ten days, and upheld the thirty day suspension with intent to dismiss.  On February 3, 2004, Local 2187 filed a grievance challenging the discipline.  The City Health Department upheld the decision of the disciplinary panel.  On February 6, 2004, Local 2187 filed another grievance at the next step of the grievance process.  The City Health Department denied the grievance.

The City discharged Dr. Magee on March 12, 2004.  Local 2187 moved Dr. Magee's grievance to District Council 47 for referral to arbitration.  On May 3, 2004, District Council 47 submitted an arbitration demand to the AAA.  All of Dr. Magee's grievances regarding the February 2002 reduction of her work hours, her suspensions without pay, and her discharge, were consolidated and scheduled to be heard by the same arbitrator on November 1, 2004.

Prior to the scheduled arbitration, Dr. Magee telephoned the Local 2187 attorneys' office to ask who would be handling the arbitration and to schedule a meeting to prepare for the arbitration.  At the time of her call, the attorneys' office could not confirm which attorney was assigned to handle the arbitration.  Approximately one week prior to the scheduled arbitration, the City was granted a continuance of the hearing to October 13, 2005, because of the death of the Assistant City Solicitor's mother.

Local 2187 scheduled a meeting among Dr. Magee, Mora, and Local 2187's attorney, Ralph Teti, Esq. ("Teti"), to prepare for the arbitration.  After it was rescheduled at Dr. Magee's request, the meeting was held on October 7, 2005.

Dr. Magee wanted to reschedule the October 13, 2005 hearing because she observed the religious holiday of Yom Kippur.  Dr. Magee testified Mora was unable to reschedule the hearing for her.  She contacted her rabbi about the situation but did not receive a response, so she decided to attend the hearing as scheduled.  At the City's request, the arbitrator postponed the hearing one week to November 1, 2005, to accommodate a City witness who also observed Yom Kippur.  Then, with Dr. Magee's consent, Local 2187 attempted to settle the grievances with the City, but the settlement efforts were unsuccessful.  The arbitration was rescheduled for January 3, 2006.

On December 20, 2005, the City requested the arbitration be continued again because the

new Assistant City Solicitor had insufficient time to prepare.  Local 2187 opposed the

continuance in a letter to the AAA, but the arbitrator continued the case until March 17, 2006.

Local 2187 did not notify Dr. Magee that the arbitrator had granted the City's request for a

continuance; Dr. Magee learned of the arbitrator's decision when she contacted the Local 2187

attorneys' office.  Dr. Magee asked Local 2187 to continue the March 17, 2006, hearing to

another date.  Local 2187 requested a continuance, and the arbitrator continued the hearing to

November 30, 2006.

The arbitration proceeding included three days of in-court proceedings.  At the conclusion

of the City's case, Dr. Magee testified regarding her grievances.  The parties submitted post-

hearing briefs to the arbitrator in lieu of closing arguments.  On March 7, 2008, the arbitrator

determined the City had just cause for terminating Dr. Magee's employment.  Defendants aver,

and Dr. Magee does not contest, that under Article 7 of the Collective Bargaining Agreement

between Local 2187 and the City, the decision of the arbitrator is binding.

Six days after the arbitrator's decision was mailed, Dr. Magee sent an e-mail to Ralph

Teti, Esq., defendants' attorney, to thank him for his efforts on her behalf.  Dr. Magee avers she

sent the e-mail merely to be courteous, because she did not want to air her allegations of union

retaliation before the arbitrator.

### 4.    EEOC charges against District Council 47

On June 30, 2004, Dr. Magee filed an EEOC charge of age discrimination and retaliation

against District Council 47.  She dually filed the charge with the Pennsylvania Human Relations

Commission ("PHRC").  In the charge, Dr. Magee alleged:

I.       I began working for the City of Philadelphia Health Department in 1992,

11

as an hourly Clinician.  In January of 2003, I filed a charge of age discrimination (Charge No. 170A300840) with the EEOC against the Health Department.  I filed this charge because the Health Department reduced my salary and changed my employment to part-time status.  I believe that the Philadelphia Pension Board has conspired with the Health Department to have my pension lowered by reducing my hours.  I was denied the opportunity of a hearing to appeal this reduction.  Respondent has actively aided the Pension Board in harassing me as a result of my EEOC complaint.

II.      Respondent indicated that they could not assist me.

III.     I believe that I have been discriminated against because of my age (63) and retaliated against in violation of the Age Discrimination in Employment Act.  Respondent failed to represent me and actively resisted my filing a grievance.

Dr. Magee did not file a charge of discrimination or retaliation against Local 2187 with the

EEOC or PHRC.  The EEOC issued Dr. Magee a notice of right to sue without making findings

regarding her discrimination or retaliation claims.

### 5.      Evidence regarding Local 2187 and District Council 47

At deposition in this federal lawsuit, Dr. Magee testified that Scott, Cronin, Capezio, and

Lori Stabinski ("Stabinski"), a Union Steward, conspired and colluded with the City Health

Department and Pension Board to deprive her of pension benefits, which included earlier

retirement, and to replace her with a younger worker with a lesser pension liability.  She also

testified that Local 2187 discriminated against her by failing to insist that she have an orientation,

allowing her to be hired without going through the proper channels, allowing her to work for ten

years without an identification card, failing to enforce her right to have a pension booklet, and

intentionally failing to provide her information about her pension.  Dr. Magee testified that

Capezio told her Local 2187 could not help her when the City Health Department reduced her

hours, complained to the administration when Dr. Magee refused to sign blank prescriptions for

Capezio, sent Dr. Magee a patient whose speech Dr. Magee could not understand, and failed to represent Dr. Magee at meetings which resulted in Dr. Magee's discipline.  Dr. Magee also testified that when she requested a copy of Pension Plan J, Stabinski gave her a copy of Pension Plan Y in an arrogant manner.

The record also contains a March 2, 2003, e-mail from Dr. Magee to Cronin.  In the e-mail, Dr. Magee stated dissatisfaction from being "passed around" to various District Council 47 officers.  (Defs.' Mot. Summ. J. Ex. 9.)  In an e-mail to Cronin dated March 31, 2003, Dr. Magee stated she had received no response from Weeden when she asked him for clarification on her additional grievances.  She reiterated her concern with being "passed like a football."  (Defs.' Mot. Summ. J. Ex. 10.)  Cronin responded that he attempted to involve other officials in Dr. Magee's representation because Dr. Magee had expressed discontent with her representation by previous union officials.  Cronin also noted Dr. Magee was still within the jurisdiction of Local 2187, and informed her she could appeal her issues to the Local 2187 Executive Board and the District Council 47 Executive Board.

### B.    Exhaustion of administrative remedies

Defendants argue Local 2187 is entitled to summary judgment on Dr. Magee's ADEA and PHRA claims because Dr. Magee did not exhaust her administrative remedies against Local 2187.  In deferral states, where an agency is authorized to grant relief from age discrimination in employment, a grievant may not bring suit under the ADEA unless she has already commenced a proceeding with the appropriate state agency.  29 U.S.C. § 633(b); Oscar Mayer & Co. v. Evans, 441 U.S. 750, 754-58 (1979).  Pennsylvania is a deferral state.  See 43 Pa. Cons. Stat. §§ 955, 959; Sharpe v. Philadelphia Housing Authority, 693 F.2d 24, 26 (3d Cir. 1982).  A PHRA claim

must also be administratively exhausted before federal suit is filed.  43 Pa. Cons. Stat. §§ 959, 962; Woodson v. Scott Paper Co., 109 F.3d 913, 925 (3d Cir. 1997).  Although Dr. Magee filed a charge with the EEOC and PHRC against District Council 47, she did not name Local 2187 in any administrative charge.

There is a "commonality of interest" or "identity of interest" exception to the requirement that a defendant be named in an administrative charge before the EEOC.  Johnson v. Palma, 931 F.2d 203, 209 (2d Cir. 1991); Schafer v. Board of Public Education, 903 F.2d 243, 252 (3d Cir. 1990); Glus v. G.C. Murphy Co., 562 F.2d 880, 888 (3d Cir. 1977) ("Glus I"); Borecki v. Eastern Intern. Management Corp., 694 F. Supp. 47, 53-54 (D.N.J. 1988) (considering commonality of interest exception in ADEA action).  The exception permits an action to proceed against an unnamed party where the unnamed party received notice and has a shared commonality of interest with the party named in the EEOC complaint.  Schafer, 903 F.2d at 252.  Factors in determining whether a commonality of interest exists between a named and unnamed defendant are: (1) whether the plaintiff through reasonable effort could have ascertained the role of the unnamed party at the time of filing of the EEOC complaint; (2) whether the interests of the named party are so similar to the interests of the unnamed party that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the plaintiff that its relationship with the plaintiff is to be through the named party.  Glus I, 562 F.2d at 888.

In Glus v. G.C. Murphy Co., 629 F.2d 248, 251-252 (3d Cir. 1980), vacated on other

14

grounds, 451 U.S. 935 (1981) ("Glus II"), the Court of Appeals considered whether there was a commonality of interest between the Retail, Wholesale and Department Store Union, Local 940 ("Local 940"), which the plaintiff named in the EEOC complaint, and the International Union of Wholesale and Department Store Union, AFL-CIO ("International"), which the plaintiff did not name in the EEOC complaint.  The Court found the interests of Local 940 and the International were identical in all significant aspects because: their liability arose from participation in the same collective bargaining agreements; the International was the sole union signatory to the collective bargaining agreement for a portion of the period where discrimination took place; the International's representative was the chief union negotiator at many of the negotiation sessions; the International's interests were vigorously litigated by Local 940 at the EEOC proceedings; both the International and Local 940 were represented by the same attorney in the district court proceeding; complete relief could have been obtained from defendants present at the EEOC proceeding; the close relationship between the International and Local 940 could have led the plaintiff reasonably to assume that the interests of both unions were to be represented by Local 940; and the conciliation process was not rendered less effective because of the absence of the International.  Id. at 251-52.  The Court held there was jurisdiction over the International even though it was not named in the EEOC complaint.  Id. at 252.

Defendants cite Webb v. International Brotherhood of Electrical Workers, Civ. A. No. 04-3613, 2005 WL 2373869, at *8 (E.D. Pa. Sept. 23, 2005), in favor of their argument that there is no commonality of interest between Local 2187 and District Council 47.  In Webb, the court determined whether there was a commonality of interest between International Brotherhood of Electrical Workers, Local Union No. 654 ("Local 654"), which had been timely named in an

EEOC complaint, and the Chester Joint Apprenticeship and Training Committee ("CJATC"), which had not been timely named in an EEOC complaint.  The CJATC was an independent organization formed jointly by Local 654 and the National Electrical Contractors Association, Inc., to train labor for the electrical construction industry.  Id. at *1.  Local 654 names three trustees to the CJATC's governing board.  Id.  The court found: there was no question plaintiff knew of the CJATC's role in his termination at the time he filed his EEOC complaint; there was no evidence whether the interests of CJATC were so similar to Local 654's that it was unnecessary to include the CJATC in the EEOC proceedings; it was difficult to assess whether the CJATC was prejudiced by its absence from the EEOC proceedings; and plaintiff did not allege that the CJATC represented to him that its relationship with him was to be through Local 654.  Id. at *8.  The court found there was no commonality of interest between CJATC and Local 654, so the plaintiff could not maintain a Title VII action against the CJATC.  Id.

It is clear Dr. Magee knew or should have known the role of Local 2187 in the alleged discrimination and retaliation when she filed the June 30, 2004, EEOC complaint.  Before filing the complaint, she had asked Local 2187 to file grievances regarding her reduction in work hours, and corresponded with Weeden, a member of the Local 2187 Executive Board, and Scott, President of Local 2187, about her grievances.  Local 2187's written correspondence with Dr. Magee was on stationery with Local 2187 letterhead.  There is no allegation or evidence that Local 2187 represented to Dr. Magee that its relationship with Dr. Magee was to be through District Council 47.

But the close relationship between Local 2187 and District Council 47 could have led a reasonable *pro se* plaintiff to assume the interests of both entities were represented by District

16

Council 47.  It is likely Local 2187 received notice of Dr. Magee's EEOC complaint against

District Council 47; defendants share an office building and two representatives of Local 2187

serve on District Council 47.  The interests of Local 2187 and District Council 47 are similar:

District Council 47 negotiated Local 2187's collective bargaining agreements with the City

Health Department, and both defendants are represented by the same counsel in this action.

Local 2187 has not alleged that it suffered any actual prejudice because it was not named in the

EEOC action.  This action is more similar to Glus II than to Webb; Local 2187 likely had notice

of Dr. Magee's EEOC complaint against District Council 47, and the Glus I factors weigh in

favor of finding a commonality of interest between the two defendants.  Local 2187 will not be

granted summary judgment on Dr. Magee's ADEA and PHRA claims for failure to exhaust

administrative remedies.

### C.    ADEA claim

Defendants argue Dr. Magee has no evidence supporting a case for age discrimination or

retaliation under the ADEA.  The ADEA, 29 U.S.C. § 623(c), provides:

> It shall be unlawful for a labor organization –
>
> (1) to exclude or expel from its membership, or otherwise discriminate against, any individual because of his age;
>
> (2) to limit, segregate, or to classify or fail or refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual or employment opportunities, or would limit such employment opportunities or otherwise adversely affect his status as an employee or as an applicant for employment, because of such individual's age;
>
> (3) to cause or attempt to cause an employer to discriminate against an individual in violation of this section.

The ADEA's protections against age discrimination are limited to individuals at least forty years

in age.  29 U.S.C. § 631(a).  Where, as here, a plaintiff alleges age discrimination based on

disparate treatment, ADEA liability depends on whether age "actually motivated" the defendants'

decision.  See Hazen Paper Co. v. Biggins, 507 U.S. 604, 610.

Dr. Magee did not attach any evidence to her response to defendants' motion for

summary judgment.  There is no dispute Dr. Magee was more than forty years of age at all

relevant times.  But the only evidence against District Council 47 in the record is Dr. Magee's

uncontested allegation that her work hours were transferred to an employee six years younger,

and her deposition testimony alleging Cronin conspired with officers of Local 2187, the City

Health Department, and the Pension Board to deprive her of pension benefits and replace her

with a younger worker.  Although Dr. Magee testified at deposition that the City Health

Department transferred some of her work hours to a younger employee, there is no evidence that

District Council 47 was involved in the City Health Department's allocation of work hours.  Dr.

Magee did not identify any specific facts supporting her allegations that Cronin conspired against

her.  Her testimony, unsupported by specific facts, is not sufficient to create a genuine issue of

material fact precluding summary judgment.  See Celotex, 477 U.S. at 324; In re Ikon Office

Solutions, Inc., 277 F.3d 658, 666 (3d Cir. 2002) (a party opposing a motion for summary

judgment "must go beyond its pleading and designate specific facts by use of affidavits,

depositions, admissions, or answers to interrogatories showing there is a genuine issue for trial").

Dr. Magee has not produced evidence that District Council 47 took any adverse action against

her.

Dr. Magee has not produced evidence of discrimination by Local 2187 beyond general

allegations of conspiracy in her deposition testimony and her e-mails stating dissatisfaction with

being "passed around" to different union officials.  These are not facts supporting an inference that Local 2187 took adverse action against Dr. Magee.  The assignment of different union officials to Dr. Magee did not prevent Local 2187 from pursuing Dr. Magee's grievances against the City Health Department.  Even if representation by different union officials was adverse to Dr. Magee, there is no evidence that age motivated Local 2187's decision to assign various union officials to Dr. Magee.

Dr. Magee was unsuccessful in her arbitration against the City Health Department, but that is not evidence of age discrimination under the ADEA.  Dissatisfaction with the outcome of a grievance hearing does not give rise to an inference of discrimination.  Dimitropoulos v. Painters Union District Council 9, 893 F. Supp. 297, 299 (S.D.N.Y. 1995).  Local 2187 represented Dr. Magee in her proceedings against the City Health Department by filing grievances challenging Dr. Magee's reduction in work hours and termination, and referring the grievances to District Council 47 for approval to arbitrate.  Dr. Magee did not ask Local 2187 to represent her before the Pension Board.  The evidence shows no genuine issue of fact that Local 2187 did fulfill its duty to represent Dr. Magee and took no adverse action against her.

Dr. Magee testified Local 2187 failed to insist that she have an orientation, allowed her to be hired without going through the proper channels, allowed her to work for ten years without an identification card, failed to enforce her right to have a pension booklet, and intentionally failed to provide her information about her pension.  It is difficult to assess whether Local 2187 breached any duty to Dr. Magee because only a short excerpt of the collective bargaining agreement, describing Pension Plan Y, is in the record.  There is no evidence Local 2187 had duties to insist Dr. Magee have an orientation, be hired through proper channels, ensure she had

19

an identification card, enforce any right to have a pension booklet, or provide her information

about her pension.  Even if such duties existed, any breach would not be sufficient to support a

claim of age discrimination or retaliation under the ADEA because there is no evidence Local

2187 treated younger employees differently or had a discriminatory or retaliatory motive.

It is not disputed that the City Health Department transferred some of Dr. Magee's work

hours to an employee six years younger, but there is not a scintilla of evidence that Local 2187

was involved in the City Health Department's decision.  There are no facts supporting Dr.

Magee's general testimony that Local 2187 conspired with the City Health Department to replace

her with a younger employee.  Local 2187 filed grievances regarding Dr. Magee's reduction in

work hours and represented Dr. Magee's allegations of age discrimination before the arbitrator.

After a hearing at which Dr. Magee testified, the arbitrator made a final and binding decision

adverse to Dr. Magee, so Dr. Magee's allegation of age discrimination based on transfer of work

hours to a younger employee can no longer be litigated.  Local 2187 has fulfilled its duty to

represent Dr. Magee.

Capezio's complaints to the administration when Dr. Magee refused to sign blank

prescriptions, and the assignment of a patient whose speech Dr. Magee could not understand,

absent any evidence that Capezio acted with a discriminatory motive or treated younger

employees differently, do not constitute discrimination.  Defendants correctly argue that these

actions were done in Capezio's capacity as an employee of the City Health Department, and not

in her capacity as a union steward.  Although Capezio told Dr. Magee that Local 2187 could not

help her when the City Health Department reduced her hours, Scott, President of Local 2187,

ordered Weeden to file a grievance on Dr. Magee's behalf, and Local 2187 pursued the grievance

through arbitration.  Capezio failed to represent Dr. Magee at meetings which resulted in Dr.

Magee's discipline, but Dr. Magee did not produce evidence that she notified Capezio of the

meetings or that Capezio knew the disciplinary meetings were to occur.  Although Dr. Magee

testified that Stabinski responded to Dr. Magee's request for a copy of Pension Plan J by giving

her a copy of Pension Plan Y in an arrogant manner, this does not constitute age discrimination.

Dr. Magee has not produced evidence sufficient to support a retaliation claim.  The

ADEA, 29 U.S.C. § 623(d) provides:

> It shall be unlawful . . . for a labor organization to discriminate against any
> member thereof or applicant for membership, because such individual, member or
> applicant for membership has opposed any practice made unlawful by this section,
> or because such individual, member or applicant for membership has made a
> charge, testified, assisted, or participated in any manner in an investigation,
> proceeding, or litigation under this chapter.

To establish a *prima facie* case of retaliation, a plaintiff must show: (1) she engaged in a

protected employee activity; (2) she was subject to adverse action by defendants either

subsequent to or contemporaneous with the protected activity; and (3) there is a causal

connection between the protected activity and adverse action.  See Fogelman v. Mercy Hospital,

Inc., 283 F.3d 561, 567-68 (3d Cir. 2002).

Defendants concede the filing of an EEOC charge is a protected activity.  But Dr. Magee

has not produced any evidence that District Council 47 took any adverse action against her.

According to the evidence in the record, District Council 47's only role in the grievance process

was to approve grievances for arbitration and pay some of the costs of arbitration; District

Council 47 approved Dr. Magee's grievances for arbitration and the arbitration proceeding

against the City Health Department was completed.  Dr. Magee's only testimony regarding her

claims against District Council 47 was that Cronin conspired against her to deprive her of pension benefits and replace her with a younger worker.  These allegations could not support a causal connection between protected activity and adverse action because Dr. Magee's transfer to Pension Plan Y and reduction in work hours occurred before November 2002, when she filed her EEOC complaint against the City Health Department.  Her EEOC complaint against District Council 47 was not filed until June 2004.

Dr. Magee has not produced evidence of adverse action by Local 2187, which processed Dr. Magee's grievances at each step in the grievance procedure, and referred the grievances for arbitration after Dr. Magee filed her EEOC complaint against the City Health Department.  After Dr. Magee filed her EEOC complaint against District Council 47, Local 2187 continued to represent Dr. Magee in her arbitration against the City Health Department.  The only complaints Dr. Magee raised with respect to the arbitration concerned the failure to accommodate her observance of Yom Kippur; but the evidence in the record shows it was the arbitrator, and not Local 2187, who set the arbitration schedule.

Defendants will be granted summary judgment on Dr. Magee's ADEA claim.

**D.     PHRA claim**

Defendants argue Dr. Magee has not produced evidence in support of her PHRA claim. Under the relevant provisions of the PHRA, 43 Pa. C.S.A. § 955:

> It shall be an unlawful discriminatory practice . . .

> (c) For any labor organization because of the . . . age . . . of any individual to deny full and equal membership rights to any individual or otherwise to discriminate against such individuals with respect to hire, tenure, terms, conditions or privileges of employment or any other matter, directly or indirectly, related to employment.

22

> (d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.

For the same reasons that Dr. Magee cannot show a violation under the ADEA, Dr. Magee has not produced evidence sufficient to support a claim of age discrimination or retaliation under the PHRA.  See Fogelman, 283 F.3d at 567 ("[t]he PHRA is to be interpreted as identical to federal anti-discrimination laws except where there is something specifically different in its language requiring that it be treated differently").  Defendants' motion for summary judgment and supplemental motion for summary judgment on Dr. Magee's PHRA claims will be granted.

## IV.     CONCLUSION

Dr. Magee's motion to proceed directly to argument and open discovery will be denied. Defendants' motion for summary judgment and supplemental motion for summary judgment will be granted.  An appropriate order follows.

23

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JONI MAGEE, M.D. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| LOCAL 2187, AMERICAN FEDERATION | : | |
| OF STATE, COUNTY AND MUNICIPAL | : | |
| EMPLOYEES and ADMINISTRATIVE, | : | |
| PROFESSIONAL AND TECHNICAL | : | |
| ASSOCIATION, CITY OF | : | |
| PHILADELPHIA, DISTRICT COUNCIL 47 | : | |
| OF THE AMERICAN FEDERATION OF | : | |
| STATE, COUNTY AND MUNICIPAL | : | |
| EMPLOYEES, AFL-CIO | : | NO.  05-1669 |

## ORDER

**AND NOW**, this 21st day of July, 2008, upon consideration of defendants' motion for summary judgment, plaintiff's response, and all relevant papers in the record, for the reasons stated in the accompanying memorandum, it is **ORDERED** that:

1.       Plaintiff's motion to open discovery and proceed directly to argument (paper no. 67) is **DENIED**.

2.       Defendants' motion for summary judgment (paper no. 32) is **GRANTED**.

3.       Defendants' supplemental motion for summary judgment (paper no. 61) is **GRANTED**.

4.       Judgment is entered in favor of defendants.

5.       The Clerk of Court is directed to mark this action **CLOSED**.

 /s/ Norma L. Shapiro
Norma L. Shapiro, S.J.